IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CASSANDRA C. OLAGUE,

               Plaintiff,

vs.

COUNTY OF SACRAMENTO;
SACRAMENTO COUNTY BOARD OF
SUPERVISORS; COUNTY OF
SACRAMENTO CHILD PROTECTIVE
SERVICES; ROGER DICKINSON;
JIMMIE YEE; SUSAN PETERS;
ROBERTA MACGLASHAN; DON
NOTTLI; KENNETH DAVIS; TRACY
DAVIS; ROBERT KITAY; CHRISTINA
MEZA; RICARDO GUZMAN; CHERYL
BOURESSA; and DOES 1 through 7,

               Defendants.

_____/

No. 2:11-cv-331-LKK-EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

     This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendant Robert Kitay and defendants Cheryl Bouressa, County of Sacramento, County of Sacramento Child Protective Services, Roger Dickinson, Roberta MacGlashan, Don Nottli, Susan Peters, Sacramento County Board of Supervisors, and Jimmie Yee move to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dckt.

1   Nos. 26, 30.  For the reasons stated herein, the undersigned recommends that the motions to

2   dismiss be granted without leave to amend.

3   I.      <u>BACKGROUND</u>

4           Plaintiff's complaint alleges that in the year 2000, she and her daughter, Samantha, began

5   to live with Kenneth Davis.  Compl., Dckt. No. 1, ¶ 14.  In or about January 2003, plaintiff and

6   her daughter moved out of the house they shared with Mr. Davis; however, from January 2003

7   until 2006, Samantha continued to live with Mr. Davis on week nights due to plaintiff's work

8   schedule.  *Id.* ¶¶ 16, 17.  Plaintiff alleges that in July 2006, Mr. Davis ordered Samantha to leave

9   his home, and did not have contact with her again for over a year.  *Id.* ¶ 18.

10          On or about January 12, 2008, plaintiff allowed Samantha to spend a weekend with Mr.

11  Davis and his wife, Tracy Davis.  *Id.* ¶ 19.  Plaintiff alleges that during that visit, the Davis's

12  "began working in concert to unlawfully take custody of Samantha for the purpose of depriving

13  plaintiff of her parental rights and to enrich themselves, with monies provided by federal and

14  state aid for dependent children."  *Id.*

15          Plaintiff alleges that on or about January 15, 2008, Mr. Davis requested custody of

16  Samantha, but plaintiff refused.  *Id.* ¶ 20.  According to plaintiff, the Davis's then began to use

17  threats and intimidation in order to coerce plaintiff into giving them custody, and they also began

18  to influence Samantha to leave plaintiff's custody without plaintiff's consent.  *Id.*

19          Plaintiff contends that on or about January 18, 2008, she allowed Samantha to visit

20  plaintiff's sister, Christina Meza.  *Id.* ¶ 21.  Plaintiff alleges that during the visit, Meza, the

21  Davis's, Ricardo Guzman, and others worked in concert to remove Samantha from plaintiff's

22  custody without plaintiff's consent.  *Id.*  According to plaintiff, Meza and Guzman "delivered"

23  Samantha to the Davis's, who took custody of Samantha and then "began to use intimidation to

24  keep plaintiff away from her daughter."  *Id.* ¶¶ 21, 22.  Plaintiff alleges that Samantha refused to

25  return to plaintiff's custody and the Davis's refused to return her to plaintiff's custody.  *Id.* ¶ 22.

26  ////

2

Plaintiff alleges that on or about February 7, 2008, plaintiff called the Sacramento Police Department to report that the Davis's had unlawful custody of Samantha and to ask for the police department's assistance in "recovering" Samantha. *Id.* ¶ 23. Later that day, the police went to the Davis's home and took Samantha from the home. *Id.*

Plaintiff alleges that on or about February 8, 2008, the Davis's, Meza, Guzman, and others began working in concert with Robert Kitay, a private attorney, to use the Sacramento Superior Court "as a tool to kidnap Samantha." *Id.* ¶ 24. Plaintiff contends that in furtherance of that conspiracy, Kitay made threatening phone calls to plaintiff demanding that plaintiff give custody of Samantha to Mr. Davis. *Id.*

According to plaintiff, on or about February 14, 2008, the Davis's, Meza, Guzman, and Kitay "conspired to use fraud, perjury, forgery, and deceit to file a meritless law suit in the Superior Court . . . requesting the Court to grant Davis custody of Samantha." *Id.* ¶ 25. Plaintiff alleges that Kitay misrepresented to the court that he had given plaintiff notice of Mr. Davis's petition for guardianship when in fact he had not. *Id.* Plaintiff contends that the court relied on false and misleading declarations filed in support of Mr. Davis's petition for guardianship without giving plaintiff an opportunity to be heard, and granted temporary custody of Samantha to Mr. Davis, with visitation rights for plaintiff. *Id.* ¶ 26. The court's review of the Superior Court case file, however, reveals a protracted legal dispute that was considered by the court.[1]

Plaintiff alleges that on or about February 21, 2008, the County of Sacramento Child Protective Services, Cheryl Bouressa (an employee of the County of Sacramento Child Protective Services), and Does 1 through 4 agreed to aid the Davis's and Meza in the conspiracy, in that they had actual knowledge of the fraud used in obtaining custody of Samantha and knew that plaintiff did not pose a threat to Samantha, yet they recommended that Mr. Davis be granted

---

[1] The County Defendants' request for judicial notice of the documents in the Sacramento Superior Court case file, Dckt. No. 30-2, is granted. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to the matters at issue").

1    custody because plaintiff is Latina and the Davis's are white.  *Id.* ¶¶ 27, 28.  Plaintiff further

2    alleges that the Davis's, Guzman, Meza, Kitay, the County of Sacramento Child Protective

3    Services, Bouressa, and Does 1 through 7 thereafter continued to work in concert to obstruct

4    justice and knowingly and purposefully refused to comply with the order granting plaintiff

5    visitation rights.  *Id.* ¶¶ 29-31.  According to the complaint, Samantha was later removed from

6    Mr. Davis's custody for safety reasons.  *Id.* ¶ 31.

7          On February 4, 2011, plaintiff filed a complaint against several defendants, including

8    family law attorney Kitay, several other private citizens (Mr. Davis, Tracy Davis, Meza, and

9    Guzman), and numerous defendants from the County of Sacramento (the County of Sacramento;

10   the County of Sacramento Board of Supervisors; the County of Sacramento Child Protective

11   Services; Child Protective Services employee Bouressa; and County of Sacramento Supervisors

12   Roger Dickinson, Jimmie Yee, Susan Peters, Roberta MacGlashan, and Don Nottli (hereinafter,

13   "County Defendants")).  *See generally id.*  The complaint alleges that defendants violated

14   plaintiffs federally protected rights and asserts claims under 42 U.S.C. §§ 1981, 1983, 1985,

15   1986, 1988, and 2000(a), and also references California Civil Code sections 51 and 52.  *Id.*

16         Defendant Kitay and the County Defendants now move to dismiss plaintiff's complaint

17   pursuant to Rule 12(b)(6).[2]  Dckt. Nos. 26, 30.  Plaintiff opposes the motions.  Dckt. Nos. 34, 38.

18   II.    MOTION TO DISMISS

19         A.    Standards

20         To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

21   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

22   contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

23   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

24   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

25   

26         [2] Mr. Davis, Tracy Davis, Meza, and Guzman have not yet appeared in the action and do not
     appear to have been served.

                                              4

1    action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

2    236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

3    'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

4    (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

5    pleads factual content that allows the court to draw the reasonable inference that the defendant is

6    liable for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of

7    cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

8    theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

9        In considering a motion to dismiss, the court must accept as true the allegations of the

10    complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

11    the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

12    in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

13    (1969).

14        The court is mindful of plaintiff's pro se status.  Pro se pleadings are held to a less

15    stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21

16    (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to

17    notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d

18    1122, 1127-28 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).  However,

19    although the court must construe the pleadings of a pro se litigant liberally, *Bretz v. Kelman*, 773

20    F.2d 1026, 1027 n. 1 (9th Cir. 1985), that liberal interpretation may not supply essential elements

21    of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of*

22    *Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).  Furthermore, "[t]he court is not

23    required to accept legal conclusions cast in the form of factual allegations if those conclusions

24    cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network,* 18 F.3d

25    752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or

26    unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

B.     Discussion

Defendant Kitay moves to dismiss plaintiff's complaint, arguing that (1) plaintiff's complaint is barred by the applicable statute of limitations, and (2) the facts alleged in the complaint do not support any of plaintiff's federal civil rights claims.  Dckt. Nos. 26, 27, 36. The County Defendants also move to dismiss, arguing that (1) plaintiff's complaint is barred by the applicable statute of limitations; (2) plaintiff has failed to state a claim for relief for federal civil rights violations; and (3) plaintiff failed to exhaust her administrative remedies as to her state law claims, and has similarly failed to state a claim for relief based upon state law.  Dckt. No. 30.

1.  42 U.S.C. § 1981

Plaintiff alleges that defendants violated § 1981 by discriminating against plaintiff on the basis of race.  However, to maintain an action under § 1981, a contractual relationship must exist between the moving party and the party to be sued.  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479-80 (2006).  Plaintiff's complaint does not allege a contractual relationship between herself and any of the defendants, nor does plaintiff provide any facts which would suggest the possibility of such a relationship existing.[3]  Accordingly, plaintiff's § 1981 claim must be dismissed without leave to amend.  *Noll*, 809 F.2d at 1448 (while the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears amendment would be futile).

2.  42 U.S.C. § 1983

Plaintiff also alleges that defendants violated § 1983 by depriving her of her parental rights under the Due Process Clause of the Fourteenth Amendment solely because she was Latina (instead granting them to the Davis's, who were white).  Dckt. No. 34 at 5-6. Additionally, plaintiff alleges in her complaint that defendants violated her right to visit

---

[3] In her opposition, plaintiff does not deny the contention that there was no contract between plaintiff and defendants.  Dckt. No. 34 at 4-5.

6

1    Samantha by failing to comply with the Superior Court's visitation orders.  Compl. ¶¶ 29-31.

2        To state a claim under § 1983, plaintiff must allege: (1) the violation of a federal

3    constitutional or statutory right; and (2) that the violation was committed by a person acting

4    under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Here, defendant Kitay,

5    a privately retained lawyer, is not a state actor and was not otherwise acting under color of law.[4]

6    *See Sutton v. Providence St. Joseph Med. Ctr*., 192 F.3d 826, 835 (9th Cir. 1999) (The party

7    charged with a constitutional deprivation under § 1983 must be a person who may fairly be said

8    to be a governmental actor) (citation and quotations omitted).  Section "1983 excludes from its

9    reach merely private conduct, no matter how discriminatory or wrong."  *Id*. (citing *Am. Mfrs.*

10   *Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted)).

11   Therefore, plaintiff's § 1983 claim against defendant Kitay must be dismissed without leave to

12   amend.[3]

13       Moreover, plaintiff has not sufficiently alleged that any of the defendants violated her

14   federal constitutional or statutory rights.  Although plaintiff alleges in conclusory fashion that

15   defendants deprived her of her parental rights solely because she was Latina and instead granted

16   parental rights to the Davis's, who were white, such a claim lacks facial plausibility in light of

17   the other facts alleged in the complaint or are before the court on judicial notice of the state court

18   records.  The allegations of ethnic discrimination lack substantive detail and are purely

19   speculative as to motivation.  Moreover, any inference drawn from the few details alleged that

20   the motivation for the removal was based on plaintiff's ethnicity would ignore the fact that Mr.

21

22       [4] Although plaintiff appears to argue that Kitay's actions fall under the joint action theory,
     Dckt. No. 34 at 5-6, a joint action is only found where the "state has 'so far insinuated itself into a
23   position of interdependence with [the private entity] that it must be recognized as a joint participant
     in the challenged activity."  *Gorenc v. Salt River Project Agr. Imp. and Power Dist*., 869 F.2d 503,
24   507 (9th Cir. 1989).  Plaintiff has not shown that to be the case here.

25       [3] For the same reasons, plaintiff's § 1983 claims against the four defendants who have not
     yet appeared in this action, and who are also not state actors, must be dismissed without leave to
26   amend pursuant to 28 U.S.C. § 1915(e).

1   Davis's custodial rights were later taken away and awarded to Christina Meza who, like plaintiff,

2   is a Latina.[4]  Dckt. No. 30-2.  The court cannot draw unreasonable inferences to support a cause

3   of action that has not been properly pleaded.  *Iqbal*, 129 S. Ct. at 1949, (quoting *Twombly*, 550

4   U.S. at 570).  Nor has plaintiff alleged sufficient facts to raise more than a speculative right to

5   relief on her claim that defendants violated her right to visit Samantha since it is unclear from the

6   complaint which defendants allegedly violated her right to visitation and it is unclear when,

7   where, how, and why such defendant(s) allegedly did so.[5]

8          Further, even if plaintiff had alleged facts sufficient to state a claim under § 1983, that

9   claim would be barred by the applicable statute of limitations.  Section 1983 contains no specific

10  statute of limitations, and, accordingly, federal courts apply the forum state's statute of

11  limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

12  California has a two-year statute of limitations for personal injury actions.  Cal. Civ. Proc. Code

13  § 335.1.  Plaintiff did not file this action until February 2011, even though nearly all of the

14  alleged violations occurred in or before the fall of 2008.[6]  *Jones v. R.R. Donnelley & Sons Co.*,

15

16          [4] Plaintiff refers to the fact that the September 25, 2008 Sacramento Superior Court orders
    state that Christina Meza is to be the guardian of Christina Meza, as opposed to Samantha.  Dckt.
17  No. 38 at 7; *see also* Dckt. No. 30-2 at 49.  The error is obviously a typographical mistake as there
    is no reason why the Sacramento Superior Court would purposefully grant Christina Meza
18  guardianship over herself.  Accordingly, the court assumes that this was a mistake and recognizes
    the document as establishing that Christina Meza was granted guardianship over Samantha.  The
19  court notes that along with the minute order, the original application for that hearing and order is
    included in the submission that has been judicially noticed.  That application clearly states that
20  Christina Meza was seeking guardianship over Samantha.  Dckt. No. 30-2 at 45-46.

21          [5] Parents have a lesser liberty interest in visitation rights than they do in custodial rights, and
    although the requisite violation needed to substantiate a § 1983 violation has not yet been
22  determined, the requisite violation is likely substantial.  *See Brittain v. Hansen*, 451 F.3d 982, 995,
    998 (9th Cir. 2006) ("Allowing Section 1983 substantive due process claims to proceed under the
23  alleged deprivation of liberty . . . . could have unfortunate consequences for our federal system.  It
    could dramatically interject federal courts and federal law into domestic relations disputes involving
24  children which, as previously pointed out, is 'an area that has long been regarded as a virtually
    exclusive province of the States.'") (quoting *Sosna v. Iowa*, 419 U.S. 393 (1975)).

25          [6] All of plaintiff's claims regarding defendants depriving her of her parental rights by
26  awarding custody to the Davis's solely because she was Latina are barred by the statute of

1   541 U.S. 369, 383 (2004); Cal. Civ. Proc. Code § 335.1.  Plaintiff argues that her claims were

2   timely filed because her parental rights, had they not been taken away, would have continued

3   until Samantha turned 18 in 2010.  Dckt. No. 38 at 12.  However, plaintiff's contention

4   mistakenly contemplates that the statute of limitations does not begin until the injury is

5   completed; in fact, the statute of limitations begins when all elements of a cause of action have

6   occurred, and the moving party knows of the facts supporting this cause of action (even if they

7   do not realize they have a right to bring suit).  *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir.

8   2004) ("Under federal law, a claim accrues when the plaintiff knows or has reason to know of

9   the injury which is the basis of the action."); *Migliori v. Boeing N. Am. Inc.*, 114 F. Supp. 2d

10  976, 982 (C.D. Cal. 2000).

11          Further, although plaintiff names the County of Sacramento as a defendant in this action,

12  plaintiff's complaint does not include allegations that would be sufficient to state a claim against

13  the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  In *Monell,* the

14  Supreme Court held that although municipalities may be held liable as "persons" under 42

15  U.S.C. § 1983, they may not be held liable for the unconstitutional acts of its employees solely

16  on a respondeat superior theory.  436 U.S. at 691.  Rather, the Supreme Court has "required a

17  plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal

18  'policy' or 'custom' that caused the plaintiff's injury."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S.

19  397, 403 (1997) (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 480-81

20  (1986); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).  Although plaintiff alleges that the

21  County had a "policy" of discriminating against Latinas, as noted above, such a claim lacks

22  facial plausibility since the court ultimately awarded custody of Samantha to another Latina.

23  Nor has plaintiff alleged any facts regarding a custom or policy by the County with regard to

24

25  limitations.  Also, although plaintiff alleges that defendants violated her visitation rights, the
    complaint does not make it clear when these violations occurred or how the parties were involved.
26  Therefore, it is unclear whether those claims would be barred by the statute of limitations.

1    violating visitation orders.

2         Therefore, plaintiff's § 1983 claim against the County Defendants must also be

3    dismissed.  However, plaintiff will be granted leave to amend her § 1983 claim against the

4    County Defendants to the extent that she can allege specific facts supporting a violation of her

5    right to visitation with Samantha and to the extent that she can establish that such violation(s)

6    occurred less than two years prior to the time plaintiff filed her complaint.  The remainder of

7    plaintiff's § 1983 claim is dismissed without leave to amend.  *Noll*, 809 F.2d at 1448.

8              3.  <u>42 U.S.C. § 1985(3)</u>[7]

9         Plaintiff alleges that defendants participated in a conspiracy against her to deprive her of

10   her parental rights, and that the defendants did so on the grounds that she was a Latina.  Compl.

11   ¶ 36.  A § 1985(3) action requires both a deprivation of the moving party's equal protection

12   rights and that the deprivation was fueled by racial animus.  *United Brotherhood of Carpenters*

13   *& Joiners of America Local 610*, 463 U.S. 825, 828-829 (1983).  As discussed above, while

14   plaintiff alleges widespread racial animus, plaintiff provides no factual basis for the existence of

15   any specific animus (instead merely concluding that it must have existed), and the record seems

16   to negate the existence of such animus (inasmuch as members of the alleged conspiracy included

17   plaintiff's sister, who is of the same race as plaintiff, and who was also ultimately chosen to have

18   custody of Samantha).  Moreover, the statute of limitations for a § 1985(3) claim is two years,

19   yet the alleged violations occurred in or before the fall of 2008.  Therefore, plaintiff's § 1985(3)

20   claim should be dismissed without leave to amend.

21   ////

22   ////

23

24         [7] Although plaintiff does not specify which section of § 1985 her claim proceeds under, this
     court assumes that she alleges a violation of § 1985(3), as her complaint focuses on the issue of an
25   alleged conspiracy when discussing § 1985.  Compl. ¶ 36.  To the extent that plaintiff also purports
     to state a claim under § 1985(2), the court notes that it would be barred by the statute of limitations
26   (as the court proceedings finished more than two years prior to the filing date).

### 4. 42 U.S.C. § 1986

Plaintiff also alleges that defendants violated 42 U.S.C. § 1986.  However, the ability to sue someone under § 1986 requires that a violation of § 1985 occurred, and that the person to be sued under § 1986 was in a position to stop the § 1985 violation.  *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (1990); 42 U.S.C. § 1986.  Since plaintiff's § 1985 claim should be dismissed without leave to amend, plaintiff's § 1986 claim should be dismissed without leave to amend, as well.

### 5. 42 U.S.C. § 1988

Plaintiff also alleges a claim under 42 U.S.C. § 1988.  Section 1988 does not create an independent cause of action.  It is a provision allowing for the award of reasonable attorney's and expert fees to the prevailing party in suits brought under certain causes of action created by other statutes; it does not itself create substantive rights, but merely defines procedures. *Schroder v. Volcker*, 864 F.2d 97 (1988); 42 U.S.C. § 1988(b), (c).  Because § 1988 does not provide any independent cause of action, that claim should be dismissed without leave to amend. Whether plaintiff would be entitled to fees and costs under § 1988 will turn of whether she actually prevails under the substantive statutory claims and whether she actually incurs any such fees and costs.

### 6. 42 U.S.C. § 2000(a)

Plaintiff further alleges that the County Defendants violated 42 U.S.C. § 2000a.[8]  Section 2000a(a) provides for the right to equal access to certain public accommodations.  42 U.S.C. § 2000a(a).  Whether or not a venue is a public accommodations is delineated in § 2000a(b). The section lists many different venues, but it does not list public courthouses.  *Id*. § 2000a(b).

////

---

[8] While plaintiff's complaint indicates that this claim was brought against the County Defendants only, plaintiff later implies that this claim was brought against defendant Kitay, as well. Compl. ¶ 42; Dckt. No. 34 at ¶ 4.  The court will thus consider all parties in its analysis.

1    Upon review of the record, this is the only place where plaintiff alleges she was denied access.

2    As courts are not within the purview of § 2000a, plaintiff's claim should be dismissed without

3    leave to amend.

4                           7.   Cal. Civ. Code §§ 51, 52

5            Finally, plaintiff alleges that defendants violated California Civil Code sections 51 and

6    52.[9]  Section 51 provides that "[a]ll persons within the jurisdiction of this state are free and

7    equal, and no matter what their . . . . race . . . [is, and they] are entitled to the full and equal

8    accommodations, advantages, facilities, privileges, or services in all business establishments of

9    every kind whatsoever."  Cal. Civ. Code § 51(b).  Section 52 provides a remedy for violations of

10   section 51.  *Id.* § 52.

11           As an initial matter, plaintiff has not alleged any facts sufficient to state a claim under

12   sections 51 or 52.  Sections 51 and 52 require the denial of "accommodations, advantage,

13   facilities, privileges, or services" on the basis of race (or some other class).  Cal. Civ. Code. § 51

14   (b); *Cloutier v. Prudential Ins. Co. of Am.*, 964 F. Supp. 299, 304 (N.D. Cal. 1997).  However, as

15   discussed above, not only does plaintiff's complaint fail to make a specific allegation of racial

16   animus, but the record before the court also suggests the implausibility of any such animus.

17           Moreover, as the County Defendants note, plaintiff's state law claims must be dismissed

18   because plaintiff has not alleged compliance with the California Tort Claims Act ("GCA").[10]

19   The GCA requires that a party seeking to recover money damages from a public entity or its

20   employees must submit a claim to the entity before filing suit in court, generally no later than six

21   months after the cause of action accrues, and must affirmatively allege compliance with the

22   claim presentation procedure, or circumstances excusing such compliance, in her complaint.

23   _____

24       [9] Although plaintiff did not list these statutes as their own cause of action in the complaint, plaintiff referenced them on the last page of the complaint.  Compl. ¶ 46.

25       [10] In 2007, the California Supreme Court adopted the practice of using the title "Government
26   Claims Act" instead of "California Tort Claims Act."  *See City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 741-42 (2007).

1    Cal. Gov't Code §§ 905, 911.2, 945, 950.2 (emphasis added); *see also Shirk*, 42 Cal. 4th at 208,

2    209.  Plaintiff's complaint lacks any allegations that plaintiff presented her claims to the County

3    Defendants before filing suit.  Nor does plaintiff allege that she filed a late claim or explain why

4    she missed the deadline.  Nor does plaintiff respond in her opposition to the County Defendants'

5    argument that the state law claims are barred by the GCA.  *See generally* Dckt. No. 38.

6            Therefore, plaintiff's claims under California Civil Code sections 51 and 52 should be

7    dismissed without leave to amend.

8    III.    <u>LEAVE TO AMEND</u>

9            If plaintiff elects to file an amended complaint in order to state a proper § 1983 claim

10   against the County Defendants based on plaintiff's visitation allegations, the amended complaint

11   shall only state such a claim and shall not add new claims or new defendants.  The amended

12   complaint shall allege specific facts supporting a violation of her right to visitation with

13   Samantha, including specific allegations regarding who was responsible for the alleged

14   violations and when such violations allegedly occurred.

15           Plaintiff is reminded that the court cannot refer to a prior pleading in order to make her

16   amended complaint complete.  Local Rule 220 requires that an amended complaint be complete

17   in itself without reference to any prior pleading.  This is because, as a general rule, an amended

18   complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).

19           Additionally, plaintiff must comply with the requirements of Federal Rules of Civil

20   Procedure 8(a) (i.e., that the complaint set forth a short and plain statement of the claim(s),

21   showing entitlement to relief and giving the defendant(s) fair notice of the claim(s) against them)

22   and 10(b) (i.e., if plaintiff has more than one claim based upon separate transactions or

23   occurrences, the claims must be set forth in separate paragraphs).  Failure to file an amended

24   complaint will result in a recommendation that this action be dismissed.

25   ////

26   ////

IV.     <u>CONCLUSION</u>

Accordingly, IT IS HEREBY ORDERED that the status (pretrial scheduling) conference currently set for November 14, 2012 is vacated.

IT IS RECOMMENDED that:

1. Defendant Robert Kitay's motion to dismiss, Dckt. No. 26, be granted;

2. Defendants Cheryl Bouressa, County of Sacramento, County of Sacramento Child Protective Services, Roger Dickinson, Roberta MacGlashan, Don Nottli, Susan Peters, Sacramento County Board of Supervisors, and Jimmie Yee's motion to dismiss, Dckt. No. 30, be granted;

3. Plaintiff's entire complaint be dismissed (against all defendants) pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e); and

4. Plaintiff be provided thirty days from the date of any order adopting these findings and recommendations is filed to file an amended complaint as provided herein (alleging only a § 1983 against the County Defendants based on a violation of plaintiff's visitation rights).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 21, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE