IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CASSANDRA C. OLAGUE,

        Plaintiff,

        vs.

COUNTY OF SACRAMENTO;
SACRAMENTO COUNTY BOARD OF
SUPERVISORS; COUNTY OF
SACRAMENTO CHILD PROTECTIVE
SERVICES; ROGER DICKINSON;
JIMMIE YEE; SUSAN PETERS;
ROBERTA MACGLASHAN; DON
NOTTLI; CHERYL BOURESSA;
and DOES 1 through 7,

        Defendants.

_____/

No. 2:11-cv-331-LKK-EFB PS

ORDER AND
FINDINGS AND RECOMMENDATIONS

        This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants County of Sacramento (sued erroneously herein as Sacramento County Child Protective Services and Sacramento County Board of Supervisors), Roger Dickinson, Jimmie Yee, Susan Peters, Roberta MacGlashan, Don Nottoli, and Cheryl Bouressa (collectively, the "County Defendants") move to dismiss plaintiff's first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dckt. No. 51.  For the reasons stated herein, the undersigned recommends that the motion be granted.

1

1    I.    FACTUAL ALLEGATIONS

2          Plaintiff's first amended complaint is very similar to the original complaint she filed on

3    February 4, 2011, which was dismissed in its entirety.  Compl., Dckt. No. 1; First Am. Compl.

4    ("FAC"), Dckt. No. 47; *see also* Dckt. Nos. 46, 49.  The first amended complaint alleges that in

5    the year 2000, plaintiff and her daughter, Samantha, began to live with Kenneth Davis.  FAC

6    ¶ 12.  Plaintiff contends that in or about January 2003, she and her daughter moved out of the

7    house they shared with Mr. Davis.  However, from January 2003 until 2006, Samantha continued

8    to live with Mr. Davis on weeknights due to plaintiff's work schedule.  *Id.*  Plaintiff alleges that

9    in July 2006, Mr. Davis ordered Samantha to leave his home, and did not have contact with her

10   again for over a year.  *Id.*

11         On or about January 12, 2008, plaintiff allowed Samantha to spend a weekend with Mr.

12   Davis and his wife, Tracy Davis.  *Id.* ¶ 13.  Plaintiff alleges that during that visit, Mr. and Mrs.

13   Davis "began working in concert to unlawfully take custody of Samantha for the purpose of

14   depriving plaintiff of her parental rights and to enrich themselves, with monies provided by

15   federal and state aid for dependent children."  *Id.*

16         Plaintiff alleges that on or about January 15, 2008, Mr. Davis requested custody of

17   Samantha, but plaintiff refused.  *Id.* ¶ 14.  According to plaintiff, Mr. and Mrs. Davis then began

18   to use threats and intimidation in order to coerce plaintiff into giving them custody, and they also

19   began to influence Samantha to leave plaintiff's custody without plaintiff's consent.  *Id.*

20         Plaintiff contends that on or about January 18, 2008, she allowed Samantha to visit

21   plaintiff's sister, Christina Meza.  *Id.* ¶ 15.  Plaintiff alleges that during the visit, Meza, Mr.

22   Davis, Mrs. Davis, Ricardo Guzman, and others worked in concert to remove Samantha from

23   plaintiff's custody without plaintiff's consent.  *Id.*  According to plaintiff, her sister Meza and

24   Guzman "delivered" Samantha to Mr. and Mrs. Davis, who took custody of Samantha and then

25   "began to use intimidation to keep plaintiff away from her daughter."  *Id.*  Plaintiff alleges that

26   ////

1  Samantha refused to return to plaintiff's custody and Mr. and Mrs. Davis refused to return her to

2  plaintiff's custody.  *Id.*

3        Plaintiff alleges that on or about February 7, 2008, plaintiff called the Sacramento Police

4  Department to report that Mr. and Mrs. Davis had unlawful custody of Samantha and to ask for

5  the police department's assistance in "recovering" Samantha.  *Id.* ¶ 16.  Later that day, the police

6  went to Mr. and Mrs. Davis's home and took Samantha from the home.  *Id.*

7        Plaintiff alleges that on or about February 8, 2008, Mr. and Mrs. Davis, Meza, Guzman,

8  and others began working in concert with Robert Kitay,[1] a private attorney, to use the

9  Sacramento Superior Court "as a tool to kidnap Samantha."  *Id.* ¶ 17.  Plaintiff contends that in

10  furtherance of that conspiracy, Kitay made threatening phone calls to plaintiff demanding that

11  plaintiff give custody of Samantha to Mr. Davis.  *Id.*

12        According to plaintiff, on or about February 14, 2008, Mr. and Mrs. Davis, Meza,

13  Guzman, and Kitay "conspired to use fraud, perjury, forgery, and deceit to file a meritless law

14  suit in the Superior Court . . . requesting the Court to grant Davis custody of Samantha."  *Id.*

15  ¶ 18.  Plaintiff alleges that Kitay misrepresented to the court that he had given plaintiff notice of

16  Mr. Davis's petition for guardianship when in fact he had not.  *Id.*  Plaintiff contends that the

17  court relied on false and misleading declarations filed in support of Mr. Davis's petition for

18  guardianship without giving plaintiff an opportunity to be heard, and granted temporary custody

19  of Samantha to Mr. Davis, with visitation rights for plaintiff.[2]  *Id.*

20  ───────────────

21        [1] As noted below, this court has dismissed without leave to amend all causes of action
   against Robert Kitay, Christina Meza, Ricardo Guzman, Kenneth Davis, and Tracy Davis
22  ("private citizens").  Dckt. Nos. 46, 49.  The court therefore assumes that plaintiff mentions the
   private citizens for background information only.
23

24        [2] The court grants the County Defendants' request for judicial notice of the documents in
   the Sacramento Superior Court case file.  Req. for Jud. Not. ("RJN"), Dckt. No. 51-2.  *See*
25  *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248
   (9th Cir. 1992) (holding that courts "may take notice of proceedings in other courts . . .  if those
26  proceedings have a direct relation to the matters at issue").

1    Plaintiff alleges that on or about February 21, 2008, the County of Sacramento, Cheryl

2   Bouressa (an employee of Sacramento County Child Protective Services), and Does 1 through 4

3   agreed to aid Mr. and Mrs. Davis and Meza in the conspiracy, in that they had actual knowledge

4   of the fraud used in obtaining custody of Samantha and knew that plaintiff did not pose a threat

5   to Samantha, yet they recommended that Mr. Davis be granted custody because plaintiff is

6   Latina and Mr. and Mrs. Davis are white.  *Id.* ¶ 20.  Plaintiff further alleges that Mr. and Mrs.

7   Davis, Guzman, Meza, Kitay, the County of Sacramento, Bouressa, and Does 1 through 7

8   thereafter continued to work in concert to obstruct justice and knowingly and purposefully

9   refused to comply with the order granting plaintiff visitation rights.  *Id.*  According to the

10   complaint, Samantha was later removed from Mr. Davis's custody for safety reasons.  *Id.*

11    Plaintiff further alleges that on March 6, 2008, the Sacramento County Superior Court

12   granted plaintiff supervised parenting time with Samantha one evening a week for two or three

13   hours plus three hours on the weekend.  *Id.* ¶ 19.  The maternal grandmother was ordered to

14   supervise the parenting time.  *Id.*  Plaintiff alleges that on April 17, 2008 she "complained that

15   Mr. Davis had interfered with her visitation" and the Court modified the order to require

16   supervision by an agency or mutually-agreed third party.  *Id.*

17    Plaintiff contends that on September 25, 2008, Meza and Guzman replaced Mr. and Mrs.

18   Davis as Samantha's temporary guardians.  *Id.* ¶ 21.  Plaintiff alleges that, after the September

19   25 hearing, defendants County of Sacramento, Cheryl Bouressa, and Does 1 through 7 "deprived

20   plaintiff of her visitation rights with Samantha until June 15, 2009" by depriving her of

21   "approximately 42 visits."  *Id.*  Plaintiff contends that she was deprived of her visitation rights

22   without cause, notice or a hearing, which was a "violation of the Fourteenth Amendment to the

23   United States Constitution."  *Id.*  Plaintiff contends that these actions were "conscious shocking

24   and unreasonable" because the action "served no legitimate governmental interest."  *Id*. ¶ 22.

25    Plaintiff further alleges that the County Defendants have adopted, implemented,

26   promulgated and executed policies that have caused plaintiff a deprivation of her rights,

4

1  including policies allowing: (1) race discrimination, (2) the use of the Sacramento County

2  Superior Court to violate individuals' civil rights, (3) conspiracies to kidnap people and commit

3  other crimes, (4) payment for the legal defense of County officers and employees while knowing

4  that those employees have committed crimes and violated civil rights, (5) covering up crimes and

5  violating civil rights, (6) controlling employees with a history of misbehavior and refusing to

6  correct unconstitutional practices, and (7) race discrimination in law enforcement programs and

7  activities.  *Id.* ¶ 24.

8  II.   <u>PROCEDURAL HISTORY</u>

9       Plaintiff originally filed this action on February 4, 2011, alleging that the County

10  Defendants and private citizens violated 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, and

11  2000(a), as well as California Civil Code sections 51 and 52.  Compl, Dckt. No. 1.  On August

12  21, 2012, the undersigned recommended that all of plaintiff's claims against the private citizens

13  be dismissed without leave to amend; that plaintiff's §§ 1981, 1985, 1986, 1988, 2000(a) and

14  California Civil Code sections 51 and 52 claims also be dismissed without leave to amend; and

15  that plaintiff's § 1983 claim against the County Defendants be dismissed with leave to amend,

16  only to the extent that plaintiff could allege specific facts supporting a violation of her right to

17  visitation with Samantha and to the extent that she could establish that such violation(s) occurred

18  less than two years prior to the time plaintiff filed her complaint.  Dckt. No. 46 at 6-14.  The

19  findings and recommendations were adopted in full on September 21, 2012.  Dckt. No. 49.

20       On September 17, 2012, plaintiff filed a first amended complaint, alleging only a § 1983

21  claim against the County Defendants.[3]  Dckt. No. 47.  The County Defendants now move to

22

23       [3] On October 23, 2012, plaintiff re-filed a copy of her first amended complaint.  Dckt.
24  No. 54.  However, because the new copy of the first amended complaint made only a few minor
   grammatical modifications, but did not add or delete any of plaintiff's substantive allegations,
25  and plaintiff was not granted leave to file a further amended complaint, the additional copy of
   plaintiff's first amended complaint, Dckt. No. 54, was stricken.  Dckt. No. 56.  The court noted
26  that plaintiff's initial first amended complaint, Dckt. No. 47, would remain the operative

1    dismiss that first amended complaint pursuant to Rule 12(b)(6).  Dckt. No. 51.  Plaintiff opposes

2    the motion.[4]  Dckt. No. 60.

3    III.    <u>MOTION TO DISMISS</u>

4          A.    <u>Standards</u>

5          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

6    must contain more than a "formulaic recitation of the elements of a cause of action"; it must

7    contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell*

8    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

9    . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

10   action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

11   236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

12   'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

13   (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

14   pleads factual content that allows the court to draw the reasonable inference that the defendant is

15   liable for the misconduct alleged." *Id*.  Dismissal is appropriate based either on the lack of

16   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

17   theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

18         In considering a motion to dismiss, the court must accept as true the allegations of the

19   complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

20   the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

21   ////

22

23   pleading in this action.  *Id*.

24          [4] Plaintiff originally failed to file a timely opposition to the motion to dismiss.  Therefore,
25   the court ordered plaintiff to show cause why she should not be sanctioned for that failure.  Dckt.
     No. 56.  In light of plaintiff's response to the order to show cause, Dckt. No. 61, the order to
26   show cause will be discharged.

1   in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

2   (1969).

3         The court is mindful of plaintiff's pro se status.  Pro se pleadings are held to a less

4   stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21

5   (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to

6   notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d

7   1122, 1127-28 (9th Cir. 2000); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

8   Nonetheless, even though the court must construe the pleadings of a pro se litigant liberally,

9   *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985), that liberal interpretation may not

10  supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th

11  Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

12  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

13  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

14  *Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

15  unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643

16  F.2d 618, 624 (9th Cir. 1981).

17         B.   Discussion

18         Plaintiff's only claim for relief is brought under § 1983.  To state a claim under § 1983,

19  plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that

20  the violation was committed by a person acting under the color of state law. *See West v. Atkins*,

21  487 U.S. 42, 48 (1988).  Plaintiff has sought to fulfill the first prong by alleging the County

22  Defendants violated her federal constitutional rights due process and/or equal protection.

23         The County Defendants move to dismiss plaintiff's § 1983 claim, and therefore her entire

24  first amended complaint, arguing that (1) plaintiff has failed to plead facts to sufficiently allege

25  violation of her visitation rights; (2) plaintiff has failed to plead any set of facts upon which she

26  could obtain relief for a violation of her right to equal protection and/or due process under the

                                                7

1  Fourteenth Amendment; and (3) plaintiff has failed to plead facts to sufficiently allege *Monell*

2  liability.  *See generally* Dckt. No. 51-1.

3                            1. <u>Substantive Due Process</u>

4         Plaintiff appears to allege that defendants deprived her of a liberty interest in the right to

5  visitation with Samantha.  FAC ¶¶ 20, 27.  The Due Process Clause of the Fourteenth

6  Amendment contains a "substantive component" that "protects individual liberty against certain

7  government actions regardless of the fairness of the procedures used to implement them."

8  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotations omitted).   To

9  establish such a violation, the plaintiff must show "both a deprivation of her liberty and

10  conscience shocking behavior by the government."  *Brittain v. Hansen*, 451 F.3d 982, 992 (9th

11  Cir. 2006).

12         It is long-settled that custodial parents have a liberty interest in the "companionship, care,

13  custody, and management" of their children.  *Stanley v. Illinois*, 405 U.S. 645, 651 (1972);

14  *Miller v. California Dep't of Soc. Servs*., 355 F.3d 1172, 1175 (9th Cir. 2004).  The Ninth Circuit

15  also has determined that non-custodial parents have a protected liberty interest in the

16  companionship, care, custody, and management of their children; however, such interest is

17  "ambiguously lesser in magnitude than that of a parent with full custody."  *Brittain*, 451 F.3d at

18  992.  Although the requisite violation needed to substantiate a § 1983 claim has not yet been

19  decided, the amount of deprivation is likely substantial.  *Id.* at 995, 998 ("If any deprivation of

20  visitation rights, no matter how slight, can give rise to a substantive due process claim, litigants

21  will not only be able to use substantive due process as a 'font of tort law,' but also as a tool to

22  transform federal courts into family courts."); *id*. at 995 ("[W]hether visitation rights collectively

23  may be a 'fundamental' liberty interest to the parent involved, we do not believe a single

24  instance of visitation, of a single week in duration, is a 'fundamental' right.").  Regardless,

25  "interference with the familial relationship by the State, when made in the best interests of the

26  child, and with fundamentally fair procedures to the parents, is proper and not a violation of

8

1    one's civil rights." *Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987) (overruled on

2    other grounds).

3        Here, plaintiff's conclusory allegations do not raise more than a speculative right to relief

4    on her substantive due process claim.  Plaintiff simply alleges that the County Defendants

5    "deprived her of her visitation rights with Samantha until June 15, 2009."  FAC ¶ 21.  Plaintiff

6    still does not allege which defendants allegedly violated her right to visitation with Samantha or

7    when, where, how, and why such defendant(s) allegedly did so.  "While the pleading standard

8    that Rule 8 announces does not require 'detailed factual allegations,' it does demand more than

9    an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555

10   (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

11       Furthermore, even assuming that plaintiff's conclusory allegations were sufficient to

12   allege a deprivation of her liberty right to have visitation with Samantha, plaintiff has failed to

13   allege conscience shocking behavior.  To state a claim for violation of substantive due process,

14   the harmful conduct must shock the conscience or offend the community's sense of fair play and

15   decency. *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011).  Although

16   plaintiff alleges that defendants' actions were "conscience shocking and unreasonable," that

17   allegation is nothing more than a label and a conclusion. *See Twombly*, 550 U.S. at 555.  "A

18   formulaic recitation of the elements of the cause of action will not do." *Id.*

19       Moreover, because plaintiff's allegations are so conclusory, the court cannot determine

20   whether her substantive due process claims would be barred by the applicable statute of

21   limitations, as the County Defendants contend.  Dckt. No. 51-1 at 5, 6.  As this court previously

22   noted, § 1983 contains no specific statute of limitations; accordingly, federal courts apply the

23   forum state's statute of limitations for personal injury actions, which in California is two years.

24   *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1.  Although

25   plaintiff alleges in a conclusory manner that she was deprived of her right to visitation with

26   Samantha on 42 separate occasions "until June 15, 2009," she does not clearly identify the

1   specific dates of the alleged missed visits, nor does she allege which defendant is responsible for

2   each such missed visit.  Therefore, the court cannot properly determine whether the alleged

3   missed visits occurred more than two years before plaintiff filed this action in February 2011.

4          Accordingly, plaintiff's substantive due process claim must be dismissed.  In determining

5   whether leave to amend would be futile, the court can consider arguments made in plaintiff's

6   opposition to the motion to dismiss.  *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

7   Here, plaintiff states in her opposition that her visitation rights were violated because the *court*

8   did not order Meza to allow plaintiff visitation when it awarded custody to Meza on September

9   25, 2008.  Dckt. No. 60 at 7; *see also* RJN Ex. F, Dckt. No. 51-2 at 50-52 (revealing that on

10  September 25, 2008 when the state court judge awarded guardianship of Samantha to Meza, the

11  court's order did not address visitation for plaintiff).  Plaintiff contends that because the *court*

12  did not grant plaintiff visitation rights until June 15, 2009, her visitation rights were violated

13  "from September 25, 2008 through June 15, 2009."  *Id.*  Therefore, it appears that plaintiff is *not*

14  contending that any of the named defendants violated plaintiff's visitation rights.  Instead,

15  plaintiff contends that the court should have awarded her visitation during the time period at

16  issue.  An action filed in this court is not the appropriate forum to appeal from a ruling by the

17  state court as to visitation.  Moreover, to the extent plaintiff's damages claim is directed at the

18  Sacramento County Superior Court, it would be barred by the Eleventh Amendment.  *Will v.*

19  *Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989) (although § 1983 provides a federal

20  forum to remedy many deprivations of civil liberties, it does not provide a federal forum for

21  litigants who seek a remedy against a state for alleged deprivations of civil liberties; the Eleventh

22  Amendment bars such suits unless the State has waived its immunity).  A municipal court is an

23  arm of the state and is protected from lawsuit by the Eleventh Amendment.  *Franceschi v.*

24  *Schwartz,* 57 F.3d 828, 831 (9th Cir. 1995) (claim against South Orange County Municipal Court

25  barred by Eleventh Amendment because it is "arm of the state"); *Simmons v. Sacramento County*

26  *Super. Ct.,* 318 F.3d 1156, 1161 (9th Cir. 2003) (plaintiff cannot state a claim against

10

1  Sacramento County Superior Court because it is an arm of the state and thus barred by the

2  Eleventh Amendment); *see also Aukenbrandt v. Richards,* 504 U.S. 689, 703-04 (1992) (state

3  courts have exclusive jurisdiction over domestic relations issues such as divorce and child

4  custody); *Faerber v. Super. Ct. of Cal.,* 2008 WL 5115209, at *1 (N.D. Cal. Dec. 4, 2008).

5  Therefore, because it appears that amendment of plaintiff's substantive due process claim

6  would be futile, the claim must be dismissed without leave to amend. *Noll,* 809 F.2d at 1448

7  (While the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not

8  be granted where it appears amendment would be futile); *see also Zucco Partners, LLC v.*

9  *Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here plaintiff has previously been

10  granted leave to amend and has subsequently failed to add the requisite particularity to its claims,

11  [t]he district court's discretion to deny leave to amend is particularly broad.").

12  2. <u>Procedural Due Process</u>

13  To the extent plaintiff also attempts to state a claim for violation of her right to

14  procedural due process by alleging that she was deprived of visitation without cause, notice, or a

15  hearing, FAC ¶ 21, that claim must also be dismissed. The procedural due process component of

16  the Fourteenth Amendment protects individuals against the deprivation of liberty or property by

17  the government without due process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th

18  Cir. 1993). At a minimum, due process requires that the government provide "notice reasonably

19  calculated, under all the circumstances, to apprise interested parties of the pendency of the action

20  and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

21  *Trust Co.*, 339 U.S. 306, 314 (1950). However, "due process is flexible and calls for such

22  procedural protections as the particular situation demands." *Id.* A cognizable § 1983 claim

23  based on procedural due process "has three elements: (1) a liberty or property interest protected

24  by the Constitution, (2) a deprivation of the interest by the government, and (3) lack of process."

25  *Portman*, 995 F.2d at 904.

26  ////

1    Here, as discussed above, although plaintiff has a liberty interest in the right to

2   companionship, care, custody, and management of her minor child, her conclusory allegation

3   that she was "deprived of approximately 42 visits" with Samantha without cause, notice, or

4   hearing (i.e. lack of process), FAC ¶ 21, is belied by the records from the state court proceedings,

5   of which this court has taken judicial notice.  Specifically, plaintiff alleges that on September 25,

6   2008, the court appointed Meza as Samantha's temporary guardian, and after that hearing, the

7   County Defendants deprived plaintiff of her right to visitation "without cause, notice or hearing"

8   until June 15, 2009.[5]  *Id.*  However, the Minute Order from the September 25, 2008 hearing

9   confirms that plaintiff attended that hearing, and the court specifically noted "the opposition of

10  [plaintiff] to the petition."  RJN Ex. F, Dckt. No. 51-2, at 50-52.  Those court records show that

11  plaintiff not only had notice of the hearing, but she also attended the hearing and voiced her

12  opposition to Meza being awarded custody of Samantha.  Therefore, any alleged procedural due

13  process claim based on the September 25, 2008 hearing necessarily fails.  *See Sprewell v. Golden*

14  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. US. Bankr. Ct.*, 828 F.2d

15  1385, 1388 (9th Cir. 1987) ("The court is not required to accept as true allegations contradicted

16  by judicially noticed facts.")).

17    Regardless, even if plaintiff had alleged facts sufficient to state a procedural due process

18  claim under § 1983, that claim would be barred by the two-year statute of limitations since the

19  alleged violation occurred on September 25, 2008 and plaintiff did not file this action until

20  February 2011.  *Jones*, 393 F.3d at 927; Cal. Civ. Proc. Code § 335.1; *see also Maldonado v.*

21  *Harris*, 370 F.3d 945, 955 (9th Cir. 2004) ("Under federal law, a claim accrues when the plaintiff

22  ////

23  ////

24

25    [5] As noted above, plaintiff's opposition makes clear that plaintiff's allegation is based on
the court's failure to award plaintiff visitation at the September 25, 2008 hearing.  Dckt. No. 60
26  at 7.

1   knows or has reason to know of the injury which is the basis of the action."); *Migliori v. Boeing*

2   *N. Am. Inc.*, 114 F. Supp. 2d 976, 982 (C.D. Cal. 2000).  Thus, plaintiff's procedural due process

3   claim must be dismissed without leave to amend.  *Noll*, 809 F.2d at 1448.

4                    3.  Equal Protection

5        Although it is unclear, it appears plaintiff may also be attempting to allege that the

6   County Defendants violated her right to equal protection under the Fourteenth Amendment by

7   depriving her of visitation rights with Samantha based on race.  FAC ¶¶ 20, 24, 27.  That claim,

8   too, fails.

9        The Equal Protection Clause of the Fourteenth Amendment provides that "no State . . .

10  shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST.

11  amend. XIV.  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment

12  is the prevention of official conduct discriminating on the basis of race."  *Washington v. Davis*,

13  426 U.S. 229 (1976).  Classifying persons according to their race is more likely to reflect racial

14  prejudice than legitimate public concerns because the race, not the person, dictates the category.

15  *See Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 272 (1979).  "Such

16  classifications are subject to the most exacting scrutiny; to pass constitutional muster, they must

17  be justified by a compelling governmental interest and must be 'necessary . . . to the

18  accomplishment' of their legitimate purpose," *McLaughlin v. Florida*, 379 U.S. 184, 196 (1964).

19  *See also Loving v. Virginia*, 388 U.S. 1 (1967).  Therefore, "[t]o state a § 1983 claim for

20  violation of the Equal Protection Clause, a plaintiff must show that he was treated in a manner

21  inconsistent with others similarly situated, and that the defendants acted with an intent or

22  purpose to discriminate against the plaintiff based upon membership in a protected class."

23  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166-67 (9th Cir. 2005) (internal quotes omitted).

24       Here, plaintiff alleges in conclusory terms that the County Defendants deprived her of her

25  visitation rights, and then she vaguely alleges that the County Defendants did so pursuant to a

26  policy of discriminating against "people" on "the grounds of their race."  FAC ¶ 24.  However,

1  plaintiff's allegations of racial discrimination once again lack substantive detail and are purely

2  speculative as to motivation.  Moreover, any inference drawn from the few details alleged that

3  the motivation for denying visitation was based on plaintiff's race would ignore the fact that Mr.

4  Davis's custodial rights were taken away and custody of Samantha was awarded to Meza who,

5  like plaintiff, is Hispanic.  As the court previously informed plaintiff, the court cannot draw

6  unreasonable inferences to support a cause of action that has not been properly pleaded.  *Iqbal*,

7  192 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Accordingly, to the extent plaintiff

8  intended to allege that the County Defendants denied her of visitation because of her race or

9  ethnicity in violation of her right to equal protection, that claim must be dismissed without leave

10  to amend.  *Noll*, 809 F.2d at 1448; *Zucco Partners,* 552 F.3d at 1007.

11              4.  *Monell* Liability

12         Although plaintiff names the County of Sacramento as a defendant in this action,

13  plaintiff's complaint does not include allegations that would be sufficient to state a claim against

14  the County pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  "Local governments

15  are only liable under § 1983 for constitutional torts that amount to a custom or policy."  *Picray v.*

16  *Sealock*, 138 F.3d 767, 772 (9th Cir. 1998) (citing *Monell*, 436 U.S. at 691).

17         A plaintiff can establish municipal liability in one of three ways.  *Gillette v. Delmore*,

18  979 F.2d 1342, 1346 (9th Cir. 1992).  "First, the plaintiff may prove that a [County] employee

19  committed the alleged constitutional violation pursuant to a formal governmental policy or a

20  'longstanding practice or custom which constitutes the 'standard operating procedure' of the

21  local governmental entity.'"  *Id.* (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737

22  (1989)).  Second, the plaintiff may show that the individual who committed the constitutional

23  tort was an official with final policy-making authority such that the alleged tort itself constituted

24  an act of official governmental policy.  *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469,

25  480-81 (1986)) (internal quotations omitted).  Third, the plaintiff may establish that such an

26  official ratified a subordinate's unconstitutional act.  *Id.* at 1346-47 (citing *City of St. Louis v.*

1 *Praprotnik*, 485 U.S. 112, 123-24 (1988) (plurality opinion)).  "After proving that one of the

2 three circumstances existed, a plaintiff must also show that the circumstance was (1) the cause in

3 fact and (2) the proximate cause of the constitutional deprivation." *Arnold v. Int'l Bus. Mach.*

4 *Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also City of Springfield v. Kibbe*, 480 U.S. 257,

5 266-68 (1987) (discussing causation requirement in § 1983 municipal liability cases).

6 Here, because plaintiff has not stated any claims based on constitutional violations by any

7 of the County Defendants, there can be no *Monell* liability for the County.  Moreover, although

8 plaintiff alleges numerous County "policies" in her first amended complaint, FAC ¶ 24, plaintiff

9 does not identity any County policy or custom that caused her injury (i.e. that she was deprived

10 of her right to visitation periods with Samantha).  Therefore, plaintiff's § 1983 claim against the

11 County Defendants must also be dismissed without leave to amend.  *Noll*, 809 F.2d at 1448;

12 *Zucco Partners,* 552 F.3d at 1007.

13 IV.   <u>CONCLUSION</u>

14 Accordingly, IT IS HEREBY ORDERED that the October 29, 2012 order to show cause,

15 Dckt. No. 56, is discharged; and

16 IT IS FURTHER RECOMMENDED that:

17 1.  The County Defendants' motion to dismiss, Dckt. No. 51, be granted;

18 2.  Plaintiff's first amended complaint be dismissed without further leave to amend; and

19 3.  The Clerk be directed to close the case.

20 These findings and recommendations are submitted to the United States District Judge

21 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

22 after being served with these findings and recommendations, any party may file written

23 objections with the court and serve a copy on all parties.  Such a document should be captioned

24 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

25 ////

26 ////

1   within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2   *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  May 13, 2013.

4

5                                    EDMUND F. BRENNAN
                                     UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26